# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

Assigned on Briefs February 29, 2012

## ROBERT E. BOSTICK v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 276090      Rebecca J. Stern, Judge**

---

**No. E2011-01281-CCA-R3-PC - Filed August 8, 2012**

---

Petitioner, Robert E. Bostick, was indicted by the Hamilton County Grand Jury for first degree murder, aggravated burglary, attempted aggravated burglary, Class E felony theft, and Class E felony vandalism. Pursuant to a negotiated plea agreement, Petitioner pled guilty to second degree murder, a lesser included offense of first degree murder and received an agreed sentence of 20 years at 100%. All other charges were dismissed pursuant to the plea agreement. Defendant timely filed a petition for post-conviction relief which was dismissed by the post-conviction court following an evidentiary hearing. Petitioner appeals, raising two issues: (1) The post-conviction court erred by ruling his guilty plea was intelligently and voluntarily entered, and (2) Petitioner should be allowed to obtain a "second opinion mental evaluation" in order to prove he was incapable of agreeing to a plea agreement voluntarily and intelligently. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JERRY L. SMITH and ROGER A. PAGE, JJ., joined.

Kevin L. Loper, Chattanooga, Tennessee, for appellant, Robert E. Bostick.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William H. Cox, III, District Attorney General; and William Hall, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the guilty plea hearing, Petitioner (1) acknowledged that he understood, had signed, and had read the petition to accept guilty plea; (2) admitted his attorney had fully explained the charges against Petitioner; (3) admitted that he realized the agreed sentenced was "20

years at 100 percent;" (4) acknowledged that the prosecutor had accurately announced his negotiated plea agreement; (5) admitted that he was "entering this plea freely and voluntarily;" (6) acknowledged that no one had pressured, forced, threatened, or coerced Petitioner into pleading guilty; (7) acknowledged he was satisfied with his attorney's representation, and he knew of nothing else his attorney could have done that was not done; and (8) acknowledged his constitutional rights that he was waiving by entering his guilty plea.

At the post-conviction hearing, Petitioner testified that trial counsel provided Petitioner with "the discovery and the paperwork" but not until about a week before his scheduled trial. Petitioner testified he was coerced by his co-defendant into pleading guilty because there was a package proposal. Either both defendants had to take the negotiated plea offer or both defendants had to go to trial. Petitioner's testimony is somewhat puzzling because it clearly shows he did not want to go to trial:

> Q. Okay. Did you make that decision or were you coerced into [pleading guilty]?
>
> A. I believe I was coerced[.]
>
> Q. How so?
>
> A. Because it was like I didn't - - I talked to my codefendant, he was like - - he kept saying let's take time, let's take time. And I was like all right, we're going to take it. Because I didn't want to go - - I ain't want to go to trial but I felt with trial we could have beat it. That's how I felt. But he [codefendant] didn't [feel] like that.

Petitioner denied that he remembered being told by the trial judge that his sentence was twenty years at 100% and testified he was led to believe the sentence was twenty years at 30%. In fact, Petitioner stated he did not remember anything about the day he pled guilty. Petitioner testified that he did remember receiving a mental evaluation after the charges were filed. He attended "CDC" classes in school. The reason he was in special education classes was because he had a learning disability. No testimony or other proof was offered to specify the type of learning disability, but Petitioner specifically acknowledged during direct examination by his post-conviction counsel that he had no other disabilities, including mental disabilities.

Petitioner's trial counsel testified that he was the third attorney to be appointed to represent Petitioner on the charges. The other two had been allowed to withdraw as counsel

for Petitioner. Trial counsel testified that he spoke with Petitioner at length during pendency of the charges and up to entry of the guilty plea pursuant to what trial counsel termed a very favorable plea offer. Trial counsel knew that Petitioner also had lengthy discussions with his second attorney concerning the plea offer. Trial counsel reviewed the mental evaluation report done for Petitioner early in the proceedings. It concluded he was sane at the time of the offense and was competent for trial. Trial counsel testified he saw nothing in his meetings with Petitioner to contradict those conclusions.

Trial counsel went over all of the discovery materials with Petitioner. He advised Petitioner that based on the evidence, including the statement given by Petitioner to police, there was very little chance for Petitioner to win his case at trial. Trial counsel was sure that Petitioner understood what he was doing when he accepted the plea offer. Trial counsel went through the petition to plead guilty in detail with Petitioner. Trial counsel testified that while Petitioner was "not probably the most intelligent person I've ever had conversations with," Petitioner "was certainly intellectually adequate and functional." Trial counsel concluded that "[Petitioner] was able to answer questions. He was able to describe concepts back to me."

As to Petitioner's first issue raised on appeal, the trial court's order dismissing the post-conviction petition provides in pertinent part:

> Some of the circumstances of the petitioner's plea support his claim that the plea was not voluntary or intelligent. One is his learning disability; others are his youth and lack of familiarity with criminal proceedings; a fourth is his susceptibility to the influence of his co-defendant.

> Other circumstances of the petitioner's plea, however, strongly contradict his claim that the plea was not voluntary and intelligent. The transcript of the plea reflects that the petitioner read and signed the plea agreement, was aware of the charge, his sentence exposure, and his rights to counsel, trial by jury, confrontation, and non-self-incrimination, and, when given an opportunity, did not identify anything else that counsel could or should have done for him.

> In addition, the petitioner was aware of the evidence against him, including his confession, and, presumably, any evidence for him. He introduces no favorable evidence, including evidence to support his claim that his initial confession was coerced. Counsel's assessment of the charge, first-degree murder, the minimum punishment therefor[e], life imprisonment, and the apparent lack of a persuasive defense thereto and

advice to the petitioner that the plea was advantageous to him were therefore correct. All these circumstance[s] but especially the advantageousness of the plea persuade the Court that, despite the petitioner's learning disability, youth, lack of familiarity with criminal proceedings, and susceptibility to the influence of his co-defendant, his plea was a voluntary and intelligent choice among the courses of action open to him.

As to Petitioner's second issue presented on appeal, that this Court should order "a second opinion mental evaluation," Petitioner did not present this issue to the post-conviction court at the evidentiary hearing. In fact, as noted above, Petitioner testified that he was not aware of any mental disabilities he had, other than his learning disability. In his brief, Petitioner cites no legal authority in support of his second issue. He cites to an order in the record, signed by the post-conviction court, which states that Petitioner "will have a mental evaluation performed by a competent medical professional to determine his competency." There is nothing else in the record pertaining to a mental evaluation of Petitioner during the post-conviction proceedings. Petitioner correctly notes in his brief that there were no funds available to pay for a mental evaluation for him or other indigents. Rule 13 of the Rules of the Supreme Court of the State of Tennessee, section 5(2) states, "[i]n non-capital post-conviction proceedings, funding for [indigent petitioners] for investigative, expert, or other similar services shall not be authorized or approved."

Since Petitioner did not present this precise issue to the post-conviction court, and because he failed to cite to any legal authority in support of the issue, it is waived on appeal. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); *see also Brimmer v. State*, 29 S.W.3d 497, 530 (Tenn. Crim. App. 1998) (issue was waived where there was "no evidence at the post-conviction hearing concerning [the petitioner's] allegations and we cannot speculate as to the substance of the claims.").

Even if not waived, the issue would not present Petitioner with any ground for relief because we cannot order something done which would be contrary to a Supreme Court rule. Accordingly, we will only address the merits of Petitioner's first issue, whether the trial court erred by ruling that Petitioner's guilty plea was entered intelligently and voluntarily.

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. *See* Tenn. Code Ann. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual

issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. *See Momon*, 18 S.W.3d at 156; *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. *See Momon*, 18 S.W.3d at 156; *Henley*, 960 S.W.2d at 578.

Petitioner's entire argument is stated in the following two paragraphs:

> During post-conviction hearing the Petitioner [testified] that he has a learning disability, that he was a juvenile at the time of his arrest, had a lack of familiarity to the legal system, and that he was influenced to accept a joint plea offer by his co-defendant.

> Contradictory [sic] to the evidence in front of the trial court, the court erred by dismissing the petition, by disregarding the proof that the [Petitioner] was coerced and induced prior to entering [the] plea and incorrectly utilizing the standard for testing the validity of a guilty plea.

Petitioner does not argue on appeal that his guilty plea was the result of ineffective assistance of counsel. The post-conviction court did not "disregard" certain evidence as asserted by Petitioner. This evidence was considered by the post-conviction court but ultimately the post-conviction court determined that other evidence out-weighed proof favorable to Petitioner.

When a guilty plea is entered, a defendant waives certain constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront witnesses. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Id*. at 242. Thus, in order to pass constitutional muster, a guilty plea must be voluntarily, understandingly, and intelligently entered. *See id*. at 243 n.5; *Brady v. U.S.*, 397 U.S. 742, 747 n.4, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). To ensure that a guilty plea is so entered, a trial court must "canvass[ ] the matter with the accused to make sure he [or she] has a full understanding of what the plea connotes and of its consequence[s]." *Boykin*, 395 U.S. at 244. The waiver of constitutional rights will not be presumed from a silent record. *Id*. at 243.

The record fully supports the post-conviction court's ruling. Petitioner is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____

THOMAS T. WOODALL, JUDGE